OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff, a member of the Bar, has sued his former employer, a law firm. He claims he was wrongfully discharged as an associate because of his insistence that the firm comply with the governing disciplinary rules by reporting professional misconduct allegedly committed by another associate. The question presented is whether plaintiff has stated a claim for relief either for breach of contract or for the tort of wrongful discharge in violation of this State’s public policy. The lower courts have dismissed both causes of action on motion as legally insufficient under CPLR 3211 (a) (7) on the strength of New York’s employment-at-will doctrine. For reasons which follow, we modify the order and reinstate plaintiff’s cause of action for breach of contract.
I.
In the complaint, which must be accepted as true on a dismissal motion under CPLR 3211 (a) (7), plaintiff alleges that he was a commercial litigation attorney associated with defendant law firm from June 16, 1986 until March 18, 1988. In early 1987, plaintiff requested that the law firm represent him in the purchase of a condominium apartment. The firm agreed and assigned a fellow associate (L.L.) "to do 'everything that needs to be done’ ”. For several months, L.L. neglected *632 plaintiff’s real estate transaction and, to conceal his neglect, made several "false and fraudulent material misrepresentations”. In September 1987, when plaintiff learned of L.L.’s neglect and false statements, he advised two of the firm’s senior partners. They conceded that the firm was aware "that [L.L.] was a pathological liar and that [L.L.] had previously lied to [members of the firm] regarding the status of other pending legal matters”. When plaintiff confronted L.L., he acknowledged that he had lied about the real estate transaction and later admitted in writing that he had committed "several acts of legal malpractice and fraud and deceit upon plaintiff and several other clients of the firm”.
The complaint further alleges that, after plaintiff asked the firm partners to report L.L.’s misconduct to the Appellate Division Disciplinary Committee as required under DR 1-103 (A) of the Code of Professional Responsibility,[1] they declined to act. Later, in an effort to dissuade plaintiff from making the report himself, the partners told him that they would reimburse his losses. Plaintiff nonetheless met with the Committee "to discuss the entire matter”. He withdrew his complaint, however, "because the [f]irm had indicated that it would fire plaintiff if he reported [L.L.’s] misconduct”. Ultimately, in December 1987 — as a result of plaintiff’s insistence — the firm made a report concerning L.L.’s "numerous misrepresentations and [acts of] malpractice against clients of the [f]irm and acts of forgery of checks drawn on the [f]irm’s account”. Thereafter, two partners "continuously berated plaintiff for having caused them to report [the] misconduct”. The firm nevertheless continued to employ plaintiff "because he was in charge of handling the most important litigation in the [Qirm”. Plaintiff was fired in March 1988, a few days after he filed motion papers in that important case.
Plaintiff asserts that defendants wrongfully discharged him as a result of his insistence that L.L.’s misconduct be reported as required by DR 1-103 (A). In his fourth cause of action, he alleges that the firm’s termination constituted a breach of the employment relationship. In the fifth cause of action, he claims that his discharge was in violation of public policy and *633 constituted a tort for which he seeks compensatory and punitive damages.
Defendants moved to dismiss the fourth and fifth causes of action as legally insufficient pursuant to CPLR 3211 (a) (7). Supreme Court granted defendants’ motion because his employment relationship was at will, holding:
"since [the] 'Whistleblowers Law’ [Labor Law § 740] is not applicable to the facts of this case, and plaintiff has not pleaded facts to come within the exception set forth in Weiner v. McGraw-Hill,
Inc., 57 N.Y.2d 458 (1982), the rules governing the causes of action for wrongful discharge are those set forth in Murphy [v American Home Prods.
Corp. (58 NY2d 293)]. Accordingly, since under the facts pleaded herein, the law firm had the right to terminate plaintiff, the fourth and fifth causes of action are dismissed.”
The Appellate Division affirmed. It also concluded that plaintiff failed to state a cause of action because, as an at-will employee, the firm could terminate him without cause. This Court granted leave to appeal.
II.
We discuss first whether, notwithstanding our firmly established employment-at-will doctrine, plaintiff has stated a legal claim for breach of contract in the fourth cause of action. The answer requires a review of the three cases in which that doctrine is fully explained.
The employment-at-will doctrine is a judicially created common-law rule "that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason” (Murphy v American Home Prods. Corp., 58 NY2d 293, 300, supra [citing Martin v New York Life Ins. Co., 148 NY 117]). In Murphy, this Court dismissed the claim of an employee who alleged he had been discharged in bad faith in retaliation for his disclosure of accounting improprieties. In so doing, we expressly declined to follow other jurisdictions in adopting the tort-based abusive discharge cause of action for imposing "liability on employers where employees have been discharged for disclosing illegal activities on the part of their employers”, being of the view "that such a significant change in our law is best left to the Legislature” (id., at 301).
*634 With respect to the contract cause of action asserted in Murphy, the Court held that plaintiff had not shown evidence of any express agreement limiting the employer’s unfettered right to fire the employee. For this reason, the Court distinguished Weiner v McGraw-Hill, Inc. (57 NY2d 458, supra), where such an express limitation had been found in language in the employer’s personnel handbook. Finally, in Murphy, the Court rejected the argument that plaintiff’s discharge for disclosing improprieties violated a legally implied obligation in the employment contract requiring the employer to deal fairly and in good faith with the employee, explaining:
"No New York case upholding any such broad proposition is cited to us by plaintiff (or identified by our dissenting colleague), and we know of none.
New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied will be enforced (e.g., Wood v Duff-Gordon, 222 NY 88; Pernet v Peabody Eng.
Corp., 20 AD2d 781). In such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship.
Thus, in the case now before us, plaintiff’s employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. In the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination”
(id., at 304-305 [emphasis added]).
Four years after Murphy, the Court decided Sabetay v Sterling Drug (69 NY2d 329). There, the Court dismissed the complaint of an employee who claimed he was fired for "blowing the whistle” and refusing to engage in improper and unethical activities. As in Murphy, the Court found no basis for an express limitation on the employer’s right to discharge an at-will employee and, adhering to Murphy as a precedent, declined to base any such limitation on an implied-in-law obligation of dealing fairly and in good faith with its employee.
*635 Not surprisingly, defendants’ position here with respect to plaintiffs breach of contract cause of action is simple and direct, i.e., that: (1) as in Murphy and Sabetay, plaintiff has shown no factual basis for an express limitation on the right to terminate of the type upheld in Weiner; and (2) Murphy and Sabetay rule out any basis for contractual relief under an obligation implied-in-law. We agree that plaintiffs complaint does not contain allegations that could come within the Weiner exception for express contractual limitations (see, Weiner v McGraw-Hill, Inc., supra, at 465). As to an implied-in-law duty, however, a different analysis and other considerations pertain.
In arguing that the law imposes no implied duty which would curtail their unlimited right to terminate the employment contract, defendants rely on the holding in Murphy that ”[n]o obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship * * * [and] it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination” (58 NY2d 293, 304-305, supra; accord, Sabetay v Sterling Drug, supra, at 335-336). The decisions in Murphy and Sabetay, however, are not controlling here.
As plaintiff points out, his employment as a lawyer to render professional services as an associate with a law firm differs in several respects from the employments in Murphy and Sabetay. The plaintiffs in those cases were in the financial departments of their employers, both large companies. Although they performed accounting services, they did so in furtherance of their primary line responsibilities as part of corporate management. In contrast, plaintiffs performance of professional services for the firm’s clients as a duly admitted member of the Bar was at the very core and, indeed, the only purpose of his association with defendants. Associates are, to be sure, employees of the firm but they remain independent officers of the court responsible in a broader public sense for their professional obligations. Practically speaking, plaintiffs duties and responsibilities as a lawyer and as an associate of the firm were so closely linked as to be incapable of separation. It is in this distinctive relationship between a law firm and a lawyer hired as an associate that plaintiff finds the implied-in-law obligation on which he founds his claim.
We agree with plaintiff that in any hiring of an attorney as *636 an associate to practice law with a firm there is implied an understanding so fundamental to the relationship and essential to its purpose as to require no expression: that both the associate and the firm in conducting the practice will do so in accordance with the ethical standards of the profession. Erecting or countenancing disincentives to compliance with the applicable rules of professional conduct, plaintiff contends, would subvert the central professional purpose of his relationship with the firm — the lawful and ethical practice of law.
The particular rule of professional conduct implicated here (DR 1-103 [A]), it must be noted, is critical to the unique function of self-regulation belonging to the legal profession. Although the Bar admission requirements provide some safeguards against the enrollment of unethical applicants, the Legislature has delegated the responsibility for maintaining the standards of ethics and competence to the Departments of the Appellate Division (see, Judiciary Law §90 [2]; and see, e.g., Rules of App Div, 1st Dept [22 NYCRR] § 603.2). To assure that the legal profession fulfills its responsibility of self-regulation, DR 1-103 (A) places upon each lawyer and Judge the duty to report to the Disciplinary Committee of the Appellate Division any potential violations of the Disciplinary Rules that raise a "substantial question as to another lawyer’s honesty, trustworthiness or fitness in other respects”. Indeed, one commentator has noted that, "[t]he reporting requirement is nothing less than essential to the survival of the profession” (Gentile, Professional Responsibility — Reporting Misconduct By Other Lawyers, NYU, Oct. 23, 1984, at 1, col 1; at 2, col 2; see also, Olsson, Reporting Peer Misconduct: Lip Service to Ethical Standards is Not Enough, 31 Ariz L Rev 657, 658-659).[2]
Moreover, as plaintiff points out, failure to comply with the reporting requirement may result in suspension or disbarment (see, e.g., Matter of Dowd, 160 AD2d 78). Thus, by insisting that plaintiff disregard DR 1-103 (A) defendants were not only making it impossible for plaintiff to fulfill his professional obligations but placing him in the position of having to choose *637 between continued employment and his own potential suspension and disbarment. We agree with plaintiff that these unique characteristics of the legal profession in respect to this core Disciplinary Rule make the relationship of an associate to a law firm employer intrinsically different from that of the financial managers to the corporate employers in Murphy and Sabetay. The critical question is whether this distinction calls for a different rule regarding the implied obligation of good faith and fair dealing from that applied in Murphy and Sabetay. We believe that it does in this case, but we, by no means, suggest that each provision of the Code of Professional Responsibility should be deemed incorporated as an implied-in-law term in every contractual relationship between or among lawyers.
It is the law that in "every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part” (Patterson v Meyerhofer, 204 NY 96, 100; see, e.g., Arc Elec. Constr. Co. v Fuller Co., 24 NY2d 99, 103-104; Wakefield v Northern Telecom, 769 F2d 109, 112, mod after remand 813 F2d 535). The idea is simply that when A and B agree that B will do something it is understood that A will not prevent B from doing it. The concept is rooted in notions of common sense and fairness (see, Farnsworth, The Law of the Contract § 7.16, at 524 [1982]). "What courts are doing [when an omitted term is implied]”, Professor Corbin explains, "whether calling the process 'implication’ of promises, or interpreting the requirements of 'good faith’, as the current fashion may be, is but a recognition that the parties occasionally have understandings or expectations that were so fundamental that they did not need to negotiate about those expectations” (3 Corbin, Contracts § 570, 1992 Supp, at 411).
Just such fundamental understanding, though unexpressed, was inherent in the relationship between plaintiff and defendant law firm (see also, Wakefield v Northern Telecom, 769 F2d 109, 112, supra ["Implied contractual obligations may coexist with express provisions which seemingly negate them where common expectations or the relationship of the parties as structured by the contract so dictate” (emphasis added)]). Defendants, a firm of lawyers, hired plaintiff to practice law and this objective was the only basis for the employment relationship. Intrinsic to this relationship, of course, was the unstated but essential compact that in conducting the firm’s *638 legal practice both plaintiff and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession. Insisting that as an associate in their employ plaintiff must act unethically and in violation of one of the primary professional rules amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship.
From the foregoing, it is evident that both Murphy and Sabetay are markedly different. The defendants in those cases were large manufacturing concerns — not law firms engaged with their employee in a common professional enterprise, as here. In neither Murphy nor Sabetay was the plaintiff required to act in a way that subverted the core purpose of the employment. The company rules underlying the firing of Murphy and Sabetay were not, as in this case, general rules of conduct and ethical standards governing both plaintiff and defendants in carrying out the sole aim of their joint enterprise, the practice of their profession (see, Judiciary Law § 90 [2]; and see, e.g., Rules of App Div, 1st Dept [22 NYCRR] § 603.2). Unlike Murphy and Sabetay, giving effect to an implied understanding — that in their common endeavor of providing legal services plaintiff and the firm would comply with the governing rules and standards and that the firm would not act in any way to impede or discourage plaintiff’s compliance — would be "in aid and furtherance of [the central purpose] of the agreement of the parties” (Murphy v American Home Prods. Corp., supra, at 304). Thus, the case is distinguishable from Murphy and Sabetay where giving effect to the implied obligation would have been "inconsistent with” and "destructive of’ an elemental term in the agreement (id., at 304-305). We conclude, therefore, that plaintiff has stated a valid claim for breach of contract based on an implied-in-law obligation in his relationship with defendants.
III.
Plaintiff argues, moreover, citing our decision in Cohen v Lord, Day & Lord[3] (75 NY2d 95, 101), that the dictates of public policy in DR 1-103 (A) have such force as to warrant *639 our recognition of the tort of abusive discharge pleaded in the fifth cause of action. While the arguments are persuasive and the circumstances here compelling, we have consistently held that "significant alteration of employment relationships, such as the plaintiff urges, is best left to the Legislature” (Sabetay v Sterling Drug, supra, at 336 [citing Murphy v American Home Prods. Corp., supra, at 301-302]). We believe that the same rationale applies here. In 1984, the Legislature enacted a "Whistleblower” statute (Labor Law § 740, added by L 1984, ch 660, § 2). We have noted that, although the present "statute has been criticized by commentators for not affording sufficient safeguards against retaliatory discharge (see, Minda and Raab, Time for an Unjust Dismissal Statute in New York, 54 Brooklyn L Rev 1137, 1138, 1182-1187 [1989]; Dworkin and Near, Whistleblowing Statutes: Are They Working?, 25 Amer Bus LJ 241, 253 [1987]), any additional protection must come from the Legislature” (Remba v Federation Empl. & Guidance Serv., 76 NY2d 801, 803).
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be modified, with costs to plaintiff, by denying defendant’s motion to dismiss the fourth cause of action and, as so modified, affirmed.
Acting Chief Judge Simons and Judges Kaye, Titone and Bellacosa concur; Judge Smith taking no part.
Judgment appealed from and order of the Appellate Division brought up for review modified, etc.

. DR 1-103 (A) provides: "A lawyer possessing knowledge, not protected as a confidence or secret, of a violation of DR 1-103 that raises a substantial question as to another lawyer’s honesty, trustworthiness or fitness in other respects as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.”

. See also, Matter of Rowe (80 NY2d 336, 340 ["The Code of Professional Responsibility * * * counsels that * * * (l)awyers play a critical role in sustaining the rule of law and * * * the courts are charged with the responsibility of insisting that lawyers exercise the highest standards of ethical conduct * * * Conduct that tends to reflect adversely on the legal profession as a whole and to undermine public confidence in (the Bar) warrants disciplinary action”]).

. In Cohen, the Court held that a term in a law firm partnership agreement which conditions payment of earned but uncollected partnership revenues upon a withdrawing partner’s refraining from practicing law in competition with the firm restricts the practice of law in violation of DR 2-108 (A) and is, therefore, unenforceable as against public policy.