OPINION OF THE COURT
Walter M. Schackman, J.
Defendants Donaldson, Lufkin & Jenrette (DLJ) and Robert Albano move for an order pursuant to CPLR 3211 (a) (7) dismissing the complaint for failure to state a cause of action. This case presents an important question: whether an employee of a securities firm whose job responsibilities include auditing the corporation can be discharged for attempting to report violations of securities laws and DLJ’s own trading regulations.
From April 1978 until his discharge in June 1991, plaintiff Joseph Mulder was employed by DLJ. During part of that period, he was a vice-president and senior operations auditor. Plaintiff alleges that the real reason for his discharge was to conceal DLJ’s participation in money-laundering operations of DLJ’s customers and to conceal violations of securities laws that should have been reported to the appropriate governmental authorities. According to plaintiff, he presented a draft report to his immediate superior regarding the operation of the Miami office of DLJ. This draft report showed, inter alla, as follows:
"(a) A corporate account was apparently controlled by three lawyers, who were listed as officers of this corporation. One of these persons was linked with a money laundering scheme in *700 the Pablo Escobar indictment proceeding in April, 1990. Shortly after the public release of the Pablo Escobar information, the salesman in charge of the account * * * [agreed] that this account * * * would leave DLJ and come back repackaged as an offshore trust. Subsequently, this account came back with the same [government-backed $10 million] securities, not as a trust but as an offshore corporation. However, the papers at DLJ did not disclose (in violation of SEC and New York Stock Exchange rules) any of the persons in control of the corporation because the officers listed for this corporation were not individuals, but three other offshore corporations.
"(b) Money was being taken in from third parties and sent out to other third parties who had no apparent relationship to the accounts. Many of these accounts in which this occurred had no security transactions. The wiring of funds to third parties and the receipt of third party checks violated DLJ’s rules * * *
"(c) Trades were done in apparently unrelated accounts, in a manner indicating that the salesman involved was using discretion without written authorization as required by DLJ rules * * *
"(e) Money was wired overseas to third parties, in large amounts, to accounts in countries generally regarded as secrecy countries. In three instances, funds were wired in such a manner as to conceal the true name of the DLJ customer wiring the funds.
"(f) Many accounts did not contain proper documentation for trading authorizations or disclose the individuals who actually controlled these accounts, in violation of DLJ and New York Stock Exchange rules.”
After his discharge, plaintiff maintained that he had been dismissed because of his reporting of the alleged violations of rules and regulations to, among others, the defendant Robert Albano, DLJ’s compliance director. Thereafter, plaintiff brought an arbitration proceeding before the New York Stock Exchange. In the arbitration proceeding, plaintiff filed a statement of claim indicating DLJ’s alleged motivation for his discharge. DLJ filed a response to statement of claim which vigorously denied plaintiff’s allegations of violations of rules and regulations related to money laundering and maintained the plaintiff had been discharged because of poor job performance. In May 1993, the New York Stock Exchange issued an *701 arbitration award in favor of Mulder in the amount of $114,668, and costs of $1,000. The decision did not specify the basis of the award. However, the award recited the following case summary: "Ex-employee, Internal Auditor vs. Member Firm and Officers alleging that when he uncovered and brought to senior management’s attention, by way of an audit report, a drug money laundering scheme within the firm, he was wrongfully terminated and his professional reputation was damaged. Claimant also alleges false reporting to the NYSE and seeks back pay and benefits, payment for his consulting services, future earnings and exemplary damages.”
The instant complaint contains three causes of action. The first cause of action refers to the arbitration decision and seeks the imposition of punitive damages by reason of DLJ’s bad-faith dismissal of plaintiff and DLJ’s refusal to report to the proper governmental authorities the violations of law uncovered by plaintiff. According to the complaint, an award of punitive damages will discourage DLJ from firing those who uncover, as part of their jobs, violations of United States laws and violations of regulations of the New York Stock Exchange.
The second cause of action seeks recovery for libel. Specifically, it is alleged that in August 1993, after the arbitration award was rendered against DLJ, defendant Robert Albano was quoted in the Wall Street Journal as stating that plaintiff was fired because of his poor work performance and that his dismissal had nothing to do with his report on the activities of the Miami office of DLJ. Originally, as one of its contentions in the arbitration proceeding, DLJ had maintained that plaintiff had been fired by reason of his failure to perform a sales practice audit; during the course of the proceeding, however, the parties entered into a stipulation that plaintiff had never been requested by DLJ to perform a sales practice audit. In the complaint, plaintiff alleges that Albano’s statement regarding plaintiff’s work performance was false, particularly in light of Albano’s knowledge of the stipulation, which (according to plaintiff) effectively conceded that there was nothing wrong with plaintiff’s work.
The third cause of action merely seeks the imposition of punitive damages for the aforesaid libel.
At the outset, defendant maintains that plaintiff cannot properly maintain separate causes of action for punitive damages. Defendant’s statement of the general rule is correct (see, *702 e.g., Staudacher v City of Buffalo, 155 AD2d 956 [4th Dept]; APS Food Sys. v Ward Foods, 70 AD2d 483 [1st Dept]). Thus, the third cause of action, which merely seeks punitive damages arising out of Albano’s statement to the Wall Street Journal, is not properly asserted. The situation is different, however, as to the first cause of action. An arbitrator cannot award punitive damages (Garrity v Lyle Stuart, Inc., 40 NY2d 354). Plaintiff was, of course, required to submit his underlying claim to arbitration under the rules of the New York Stock Exchange. His appropriate recourse was to wait for a favorable award from the arbitrators, and then bring a plenary action in this court for punitive damages (see, Singer v Solomon Bros., 156 Misc 2d 465, decided by this court). Thus, the usual rule on punitive damages does not apply and plaintiff may maintain the first cause of action for punitive damages.
The basis for the arbitrator’s award was not set forth in the decision. Apparently, the arbitrator determined that DLJ’s discharge of plaintiff had been wrongful and thereupon awarded compensatory damages for breach of contract. DLJ maintains that the award was not res judicata as to the legality of the discharge. However, even assuming that the arbitration decision does not have a res judicata effect, this court would be inclined to sustain the cause of action.
In determining a motion to dismiss a pleading, the court assumes the allegations of the pleading to be true (Krantz v Garmise, 13 AD2d 426 [1st Dept]). The opposing party gets the benefit of any favorable inference which may reasonably be drawn, and even inadequately pleaded material can be supplemented by affidavits (Rovello v Orofino Realty Co., 40 NY2d 633).
It is well settled that where employment is for an indefinite term, it is presumed to be a hiring at will which may be terminated by either party at any time (Murphy v American Home Prods. Corp., 58 NY2d 293; Sabetay v Sterling Drug, 69 NY2d 329). However, there are exceptions to the Murphy rule. Where an employee manual in substance states that employment will continue so long as work performance is satisfactory, and an employee relies on that statement by resigning from his prior employment or passing up other offers of employment, the employee who is later discharged without cause may have a viable claim for wrongful discharge (Weiner v McGraw-Hill, 57 NY2d 458). Plaintiff indicates that the ethics manual for Equitable Financial Companies (which owns *703 DU), which manual was distributed to all DLJ employees, provided: "Breaches of law, regulations, violations of this policy statement or other irregularities — whatever your motives * * * will not be tolerated. If you have knowledge of such misconduct, report it to our legal counsel or your Chief Executive Office. Report financial irregularities to the Internal Auditor of the Equitable. Reporting such infractions is encouraged in the spirit of good corporate governance. Anyone doing so will be protected against reprisals.”
This language, which clearly protects from reprisals those employees who report violations of laws or regulations might well fall within the exception described in Weiner (supra). However, a former employee who seeks to invoke the Weiner rule must also show detrimental reliance upon the promise of continued employment (O'Reilly v Citibank, 198 AD2d 270 [2d Dept]; DiCocco v Capital Area Community Health Plan, 159 AD2d 119 [3d Dept]). In this case, plaintiff has not shown that he left his prior job or passed up other offers by reason of the manual, and thus cannot bring himself within the Weiner rule. There is, however, another limited exception to the Murphy rule. In Wieder v Skala (80 NY2d 628) a law firm associate was allegedly discharged because he insisted that the firm report to the Appellate Division Disciplinary Committee another associate who purportedly had committed violations of the Code of Professional Responsibility. The Court sustained the complaint, holding that it was an unstated but essential provision of the law firm employment contract that the firm would practice in compliance with the prevailing rules of conduct and the ethical standards of the profession. As the Court of Appeals indicated in Wieder, attorneys are held to high standards of conduct, and violations of the Disciplinary Code can lead to suspension or disbarment. The investment securities business is closely analogous to the legal profession. Securities brokers are heavily regulated by State and Federal law (including the Securities and Exchange Commission) and violations of securities laws can lead to serious consequences both for the individual and the brokerage firm that employs that person. Thus, it is logical and reasonable to extend the Wieder doctrine to securities dealers and, most probably, to any licensed business or profession whose continued practice is subject to compliance with laws or regulations governing the conduct of such business or profession. It is interesting to note that in the case of attorneys, the code of ethics requires an attorney to report violations of the disciplinary rules by *704 another attorney (see, e.g., Nassau Bar Ethics Opn, No. 94-13, reprinted in NYLJ, Apr. 25, 1994, at 6, col 3). Thus, if an employee of a securities firm can prove that he was dismissed by reason of his attempts to stop violations of securities laws, he has a cause of action against the firm for wrongful discharge.
It is true that punitive damages are not normally granted unless there is a wrong to the public (Walker v Sheldon, 10 NY2d 401). However, punitive damages can be awarded for a breach of contract where there is bad faith or a dishonest failure to carry out a contract (Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427). Although punitive damages in contract actions are relatively rare, they can be awarded where the defendant’s conduct is deemed by the court to be truly egregious. For example, in Aero Garage Corp. v Hirschfeld (185 AD2d 775 [1st Dept], lv denied 81 NY2d 701), in which a landlord deliberately prevented a tenant from obtaining a permit needed to operate the tenant’s business, the Court awarded the tenant punitive damages against the landlord. In the instant case, if plaintiff’s allegations are assumed to be true, as they must be for present purposes, DLJ dismissed plaintiff by reason of his attempt to report serious violations of securities laws and regulations designed to prevent money laundering. Certainly there is a strong public policy in favor of encouraging persons such as plaintiff to report violations of these laws without fear of retaliation by the employer. Thus, the claim for punitive damages in the first cause of action shall be sustained.
The second and third causes of action, however, are an entirely different matter. Under section 74 of the Civil Rights Law, it is a defense to a libel action that the press article in question was a fair and true report of a judicial proceeding. The statute also applies to quasi-judicial proceedings (see, Leder v Feldman, 173 AD2d 317). Section 74 will apply so long as the report is a "substantial[ly] accurate]” account of what took place in the proceeding (Glendora v Gannett Suburban Newspapers, 201 AD2d 620 [2d Dept]; Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d 63). The statute covers not only the press but also, for example, attorneys who make statements to the press regarding pending litigation (Ford v Levinson, 90 AD2d 464 [1st Dept]). Moreover, where the statements are within the purview of section 74, they are covered by an absolute privilege even if maliciously made (Branca v Mayesh, 101 AD2d 872, *705 affd 63 NY2d 994; Glendora v Gannett Suburban Newspapers, supra).
In the present case, the Wall Street Journal article, after briefly describing the nature of the arbitration proceeding and indicating that plaintiff had received an award of $114,668, set forth DLJ’s position as follows: "Donaldson Lufkin said it fired Mr. Mulder for poor performance unrelated to his money laundering report. 'The fanciful tale of intrigue and cover-up Mulder made regarding money laundering in DLJ’s Miami office * * * is without basis in fact and is irrelevant to Mulder’s termination,’ the firm said in papers filed with arbitrators.”
The foregoing language is an almost verbatim description of the contentions made by DLJ in the arbitration proceeding. The question is not whether or not the statement is "true.” The question is whether it is a substantially accurate description of the claims made in the arbitration proceeding, and the answer is yes. Thus, the second cause of action must be dismissed and the third cause of action, which is based on the second cause of action, must also be dismissed.
Accordingly, the motion is granted to the extent that the second and third causes of action are hereby dismissed.