OPINION OF THE COURT
Edward H. Lehner, J.
The central issue on this motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) is whether the exception enunciated in Wieder v Skala (80 NY2d 628 [1992]) to New York’s rule relating to employment at will should be extended to a physician employed by a nonmedical entity.
The Complaint
Plaintiff began her employment with defendant New York Times (the Times) in 1995 as a physician in a part-time capacity. In 1996, she became the full-time associate medical director of its medical department which, in addition to plaintiff, consisted of a director, a physician’s assistant and several nurses and social workers. Plaintiff’s primary duty was to provide “medical care, treatment and advice” to Times’ employees (fl 7). Among other responsibilities, plaintiff examined employees claiming workers’ compensation benefits to verify that their claimed injuries were work related.
Plaintiff alleges that on “frequent occasions, the Times’ Labor Relations Department, Legal Department and Human Resources Department directed [her] to provide them with confidential medical records of employees without those employees’ consent or knowledge” (fl 10), and that the vice-president for human resources instructed her to “misinform employees regarding whether injuries or illnesses they were suffering were work-related so as to curtail the number of Worker’s Compensation claims filed against the Times” (j| 15). Upon receiving advice from the New York State Department of Health that such conduct by a physician would violate legal and ethical duties to patients, plaintiff refused to comply with these asserted directives. Soon thereafter, in April 1999, defendant announced that as part of a restructuring of its medical department, plaintiff’s position, as well as that of the medical director and the physician’s assistant, would be eliminated. *471 The Times then contracted with Meridian Corporate Healthcare to provide a physician to be available to Times employees three days a week. In May of 1999, plaintiff responded to Meridian’s advertisement for the position of occupational health physician at the Times, but was never interviewed.
The essence of plaintiff’s complaint is that by requiring her to “unlawfully and unethically divulge confidential patient information and records,” and terminating her after she refused to comply with such directives, defendant breached the implied terms of her employment relationship (fl 33). In its memorandum of law, defendant disputes the claims of plaintiff and indicates that the reason for her discharge was purely economic.
Discussion
In deciding a motion directed to the pleadings, a court must “accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Leon v Martinez, 84 NY2d 83, 87 [1994]). Defendant’s motion shall be denied “if a cause of action is at all discernable from the factual allegations of the complaint” (Goldreyer v Van de Wetering, 217 AD2d 434, 438 [1st Dept 1995]).
It is well settled in this jurisdiction “that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason” (Murphy v American Home Prods. Corp., 58 NY2d 293, 300 [1983]). In that case, the Court of Appeals applied this much criticized rule even though the employee asserted that he had been discharged for disclosing accounting improprieties on the part of his employer. In Sabetay v Sterling Drug (69 NY2d 329 [1987]), the rule stated in Murphy was reaffirmed, the Court noting that in Murphy it had refused to imply an obligation on the part of the employer to deal in good faith with an employee at will.
A very limited exception to the employment-at-will doctrine was recognized in Wieder v Skala (supra). There the plaintiff was an attorney employed by the defendant law firm. He claimed that the firm dismissed him because he insisted that the partners report professional misconduct by a fellow associate to the Departmental Disciplinary Committee as required under Code of Professional Responsibility DR 1-103 (a) (22 NYCRR 1200.4 [a]). The Court of Appeals found that, in *472 contrast with the corporate nature of the employment in Murphy and Sabetay (supra), “plaintiffs performance of professional services for the firm’s clients as a duly admitted member of the Bar was at the very core and, indeed, the only purpose of his association with defendants” (Wieder v Skala, at 635). While the Court held that the plaintiff did state a viable breach of contract claim, it went to considerable lengths to confine the scope of its holding to the particular facts of the case. It emphasized the uniqueness of the relationship between a law firm and an attorney, as compared to that of other professionals providing managerial type of services for their corporate employers. It further noted that DR 1-103 (a) is “critical to the unique function of self-regulation belonging to the legal profession” (at 636), and quoted a commentator who wrote that the requirement to report dishonesty and untrustworthiness is “ ‘nothing less than essential to the survival of the profession’ ” (at 636).
The first issue to be resolved on this motion is whether a Wieder claim can be made against a corporation such as the Times, which is essentially in the publishing and media business. In Waldman v NYNEX Corp. (1999 WL 292634 [Sup Ct, NY County, Jan. 8, 1999, Miller, J.], affd 265 AD2d 164 [1st Dept 1999]), the plaintiff was an attorney employed by the defendant telephone company in its collection department. He alleged he was discharged because of his objection to certain collection practices against residential customers. In denying dismissal of a Wieder claim, the lower court wrote that at the pleading stage it could not be determined whether “the collection unit Plaintiff was employed in contained only attorneys and functioned solely as an in-house law firm, or whether Plaintiffs duties were a mix, such that he was more in the nature of a mid-level manager” (at *6). In affirming, the First Department agreed that the plaintiff alleged sufficient facts to come within the narrow exception to the at-will doctrine set forth in Wieder (supra). Thus, the First Department has determined that a Wieder claim can be asserted by a lawyer against a commercial enterprise.
Although plaintiff does not specifically assert that the Times medical department should be considered as an “in-house” medical office, I find that she has alleged sufficient facts such that for the purposes of this motion that department can be so treated. Viewing a medical office in a corporation as similar to an independent physician’s office leaves me with the issue as to whether a physician employed in such an office can assert an *473 exemption from the general employment-at-will rules. I have located no case where Wieder (supra) has been applied to any profession other than the law.
In Mulder v Donaldson, Lufkin & Jenrette (208 AD2d 301, 305 [1st Dept 1995]), the Court overturned a lower court decision which held that the Wieder exception “should be extended to security dealers and ‘most probably, to any licensed business or profession whose continued practice is subject to compliance with laws or regulations governing the conduct of such business or profession.’ ” There the plaintiff, a brokerage house auditor, alleged he was discharged because he reported that certain operating rules were not being followed. In dismissing, the Court observed that in Wieder (supra) the Court of Appeals “expressly distinguished its facts from situations which were very similar to plaintiffs employment circumstances with the defendant brokerage” (Mulder v Donaldson, Lufkin & Jenrette, at 306). Similarly, in McConchie v Wal-Mart Stores (985 F Supp 273 [ND NY 1997]), where an employer terminated a pharmacist for disobeying directives to stop filling prescriptions that generated low profits, it was held that Wieder was inapplicable. Claims of breach of an implied contract of employment were also rejected in the following cases: McGrane v Reader’s Digest Assn. (822 F Supp 1044 [SD NY 1993] [an investigator desired to issue certain reports of financial wrongdoing within the corporation]); Haviland v Aron & Co. (212 AD2d 439 [1st Dept 1995] [a commodities broker refused to breach the confidentiality of his clients]); Leibowitz v Party Experience (233 AD2d 481 [2d Dept 1996] [financial officer refused to falsify sales tax reports]); Wolde-Meskel v Tremont Commonwealth Council (1994 WL 167977, 1994 US Dist LEXIS 5464 [SD NY, Apr. 29, 1994, McKenna, J.] [an internal accountant reported wrongful acts to State authorities]).
In the one case found involving a physician, Finley v Giacobbe (827 F Supp 215, 221 [SD NY 1993]), the action was dismissed not because the plaintiff was a doctor, but rather because the defendant’s violation of its by-laws and regulations on which plaintiff relied “do not govern the very essence of her employment.”
In opposition to defendant’s motion, plaintiff has submitted an affidavit of Donald R. Moy, general counsel of the Medical Society of the State of New York, in which he states that the Society supports plaintiffs position. He notes that under the Principles of Medical Ethics of the American Medical Association, physicians, including those employed by industry, have *474 an ethical and legal duty to protect patient confidentiality and thus not reveal confidential communications without the consent of the patient. Exceptions apply where the injury or illness is work related, and in limited circumstances “because of overriding social considerations,” such as communicable diseases, and gunshot and knife wounds.
Subdivision (23) of Education Law § 6530 provides that it is professional misconduct to reveal “information obtained in a professional capacity without the prior consent of the patient, except as authorized or required by law.” Under Public Health Law § 230-a, the State Board for Professional Medical Conduct may impose penalties, including revocation of license, for such professional misconduct. A rule of the Board of Regents (8 NYCRR 29.1 [b] [8]) designates unauthorized disclosure of “information obtained in a professional capacity” as “unprofessional conduct.” Further, it has been held that the “disclosure of personal information learned during the course of treatment” by a psychiatrist may give rise to a cause of action in tort for “breach of the fiduciary duty of confidentiality” (MacDonald v Clinger, 84 AD2d 482 [4th Dept 1982]; see also, Doe v Roe, 93 Misc 2d 201 [Sup Ct, NY County 1977]; Doe v Roe, 190 AD2d 463 [4th Dept 1993]; CPLR 4504).
Considering these statutes and rules and the principles that govern the practice of medicine, I find that the claim that plaintiff was discharged because she refused to comply with demands that she provide Times officials with confidential medical information and that she give employees misinformation with respect to their possible claims under the Workers’ Compensation Law is sufficient to state a cause of action for breach of an implied contract of employment. I have reached this conclusion because the strictures imposed upon the profession and the resulting responsibility to the public warrants an extension of the principles set forth in Wieder (supra) to physicians.
The conduct that plaintiff herein asserts resulted in her discharge is not merely “whistle blowing” type activity, as was the situation in most of the above-cited cases, but rather is affirmative conduct which defendant allegedly requested plaintiff to perform which could have an adverse affect on her patients and result in her losing her license to practice medicine, as well as the imposition of civil liability. In McGrane v Reader’s Digest Assn. (supra, at 1050), where the asserted basis for discharge was that plaintiff was prevented from investigating claims of financial wrongdoing in the corporation, the court in *475 granting dismissal noted that “[n]o duty to innocent third parties is implicated * * * which might justify * * * Wieder interpolation of nonconsensual provisions into contracts.” Such duty is present in the claim asserted in the case at bar.
That the patients plaintiff treated were only Times employees is not relevant in considering the issue before me as there is nothing in the law that makes a physician’s duties of confidentiality and honesty any different depending on whether the patients being treated are employees of the doctor’s employer or are private patients.
Defendant asserts that Wieder (supra) is inapplicable because there the plaintiff lawyer’s only function was to perform legal services, whereas here plaintiff had a duty “to keep up-to-date case management records * * * [perform] evaluative and administrative functions * * * and record-keeping functions” (defendant’s mem of law, at 11). However, such work is typical of that engaged in by private physicians, with the enormous paper work required of them today because of insurance being the bane of the profession. Defendant also maintains that the fact that the medical unit at the Times had other than medical personnel employed there, such as social workers, makes the case different from Wieder. This argument lacks merit as most large law offices contain many nonprofessional employees, such as paralegals, to service clients.
The Court of Appeals, in differentiating Murphy and Sabetay (supra), noted that in those cases the employees performed “accounting services * * * in furtherance of their primary line responsibilities as part of corporate management,” whereas in Wieder “plaintiff’s performance of professional services * * * was * * * the only purpose of his association with defendants” (Wieder v Skala, 80 NY2d, supra, at 635). The same can be said of plaintiff herein with respect to her performance of services for the employees of the Times in its medical department. Moreover, considering the Times medical department as an “in house” medical office, there is clearly an understanding that the physicians employed therein will conduct the practice “in accordance with the ethical standards of the profession” (Wieder v Skala, at 636).
The choice that plaintiff asserts resulted from the demands placed upon her is similar to the choice faced by the plaintiff in Wieder (supra), where the failure to report untrustworthiness pursuant to DR 1-103 (a) made “it impossible for plaintiff to fulfill his professional obligations [and] plac[ed] him in the position of having to choose between continued employment and *476 his own potential suspension and. disbarment” (Wieder v Skala, at 636-637).
While the critical rule in Wieder (supra) was the requirement of DR 1-103 (a) to report dishonesty and untrustworthiness, and no similar professional rule is involved herein, I nevertheless conclude that no physician should be placed in the position of choosing between either retaining employment or violating the ethical standards provided by State statutes and regulations as well as by the relevant professional association. Therefore, an allegation of good faith and fair dealing may be implied in a contract for the employment of a physician. This ultimately is for the benefit of the patient as well as the physician.
Accordingly, the motion to dismiss the first cause of action for breach of the implied contract of employment is denied.
The second cause of action, which appears only to assert a claim for punitive damages, is dismissed as an independent cause of action to recover such damages is not recognized (Goldstein v Winard, 173 AD2d 201 [1st Dept 1991]; Halpern v Selkow, 80 AD2d 528 [1st Dept 1981]). Moreover, in this cause of action plaintiff has not satisfied the requirement of asserting conduct that is independent of the breach of contract cause of action. (See, New York Univ. v Continental Ins. Co., 87 NY2d 308, 316 [1995]; Wieder v Skala, 272 AD2d 58 [1st Dept 2000].)