OPINION OF THE COURT
Rolando T. Acosta, J.
Introduction
In the context of this preanswer motion to dismiss the complaint pursuant to CPLR 3211, the court is required to consider whether in the circumstances of this case the court should extend the ruling announced in Wieder v Skala (80 NY2d 628 [1992]). In Wieder, the Court of Appeals allowed a narrow exception to the employee-at-will doctrine, finding that a law firm had an implied-in-law obligation of good faith and fair dealing when an associate in a firm is terminated for insisting that the firm comply with Code of Professional Responsibility DR 1-103 (22 NYCRR 1200.4), which requires the reporting of misconduct to the Disciplinary Committee. Under the circumstances of this case, the court is constrained to find an implied-in-law obligation in the employee-at-will agreement entered into between plaintiff and defendants and defendants’ motion to dismiss is therefore denied.
Background
Plaintiff Gerard A. Connolly was an associate at the law firm of Napoli, Kaiser & Bern, LLP (NKB) and its successor Napoli Bern, LLC (NB) from July 2000 until he was terminated in April 2002. Connolly was hired pursuant to an employment agreement as an “employee-at-will.” Significantly, the contract was for an indeterminate duration and paragraph 3.1 (d) and (f)[1] provided that either side could terminate the employment relationship for “any reason or for no reason whatsoever” upon two weeks’ notice to the other side.
In his complaint, Connolly asserts that during his tenure at the law firm, he was assigned to represent a husband in a *532 personal injury action and the husband’s wife in a derivative action. The case settled for $850,000 and defendant Kaiser began the closure process. On or about April 2001, the plaintiff husband spoke with Kaiser, who was heard to say “I don’t care if you have to take it down to the car and have her sign it, she has to sign it.” The husband was then told by Kaiser to take the release into the bathroom and bring it back signed. A notarized release was eventually given to Connolly, who forwarded it to the defendant’s carrier.
Several months later, on or about July 16, 2001, the firm received a letter from an attorney who had previously represented both the husband and wife. In the letter the attorney alleged that the case had been settled without the wife’s knowledge, and Kaiser gave the letter to Connolly for his response. Connolly wrote to the attorney and advised him that “the release executed by both husband and wife plaintiffs had been ‘provided to [the firm] and forwarded to defendants’ insurance company’ and that the firm believed that the wife had waived her claims.” Kaiser wrote a subsequent letter in September to the wife’s attorney alleging that the firm had never represented the wife.
In March 2002, the plaintiff wife moved by order to show cause to vacate the settlement on the grounds that she had not consented to it and was unaware of it. In response,
“Kaiser presented Connolly with an affirmation to sign which Kaiser stated had been prepared by Bern, representing that the plaintiff husband had provided the [firm] with the executed release[,] that the release had been signed by the husband and wife plaintiffs and that the wife had agreed to waive her claim, and that the release accordingly had been processed to settle the case.”
Connolly refused to sign the affirmation and instead prepared his own affirmation in opposition to the order to show cause. According to Connolly, he was terminated for his “refusal to allow himself to be drawn into the cover-up of defendants’ wrongful acts.” {See complaint 1Í1Í15-29.)
On January 22, 2004, in response to a letter written by plaintiff complaining about his termination, NKB’s counsel wrote plaintiff a letter advising him that NKB would examine what efforts he had made to mitigate damages:
“Like any other claimant in a contract action, you must mitigate any supposed losses and must be pre *533 pared to provide proof thereof. Rest assured that depositions will be conducted of each and every lawyer you purportedly contacted to obtain employment and each firm with which you had any relationship during or since your employment by [NKB].”
In his complaint, Connolly asserts four causes of action. The first alleges that his discharge was wrongful and intended as retaliation for his refusal to be drawn into the defendants’ coverup; the second alleges that he is entitled to five percent of certain fees and earnings (which appear to be tied to paragraph 2.5 of the employment contract that deals with bonuses) as well as an accounting to determine the amount of damages; the third alleges that NKB’s January 22 letter was intended as a “thinly veiled threat to impede his future ability to practice law . . . [and was] . . . nothing short of extortion”;[2] and the fourth alleged a breach of a fiduciary relationship and sought an accounting.
Plaintiffs Wieder Claim
In evaluating a motion to dismiss for failure to state a claim under CPLR 3211 (a) (7), the court must accept the allegations of the complaint as true, and accord plaintiff the benefit of every possible favorable inference and determine only whether the facts as alleged fit within a cognizable legal theory. (CBS Corp. v Dumsday, 268 AD2d 350 [1st Dept 2000]; see also Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001] [motion must be denied if “from [the] four corners [of the pleading] factual allegations are discerned which taken together manifest any cause of action cognizable at law”]; Wiener v Lazard Freres & Co., 241 AD2d 114 [1st Dept 1998] [“(s)o liberal is th(is) standard . . . that the test is simply ‘ “whether the proponent of the pleading has a cause of action,” ’ not even ‘ “whether he has stated one” ’ ”].)
In Wieder v Skala (80 NY2d 628 [1992]), the Court of Appeals recognized a cause of action for breach of an implied contract in situations where an associate in a law firm, hired as an employee-at-will, is terminated for his insistence that the firm comply with DR 1-103 (a),[3] which imposes an obligation on an attorney to report another attorney’s misconduct, as defined in Code of Professional Responsibility DR 1-102 (22 NYCRR *534 1200.3),[4] to the Appellate Division of the Supreme Court. In the context of a motion to dismiss pursuant to CPLR 3211 (a) (7), the issue in this case is whether the complaint sufficiently pleaded a breach of an implied-in-law obligation where although Connolly was not terminated for insisting that the firm comply with DR 1-103 as in Wieder, he was terminated instead for refusing to violate DR 1-102. The answer has to be yes.
It is well settled that an employee-at-will may be terminated for any reason or no reason at all. (Murphy v American Home Prods. Corp., 58 NY2d 293, 300 [1983]; Sabetay v Sterling Drug, 69 NY2d 329 [1987].) The Court in Wieder, however, recognized a narrow exception to this rule.
In Wieder, the plaintiff, an associate at a law firm, requested that the firm represent him in a real estate transaction. The firm assigned a fellow associate to represent plaintiff. The fellow associate neglected the real estate transaction and made several false and fraudulent material misrepresentations to conceal his neglect. When plaintiff learned of the neglect, he informed two partners who conceded that the firm was aware that the fellow associate was a pathological liar and had previously lied to members of the firm about other matters. Plaintiff confronted his fellow associate who admitted that he had committed several acts of legal malpractice and fraud upon the associate and several other clients of the firm. At plaintiffs insistence, the firm eventually reported the fellow associate’s misrepresentations and acts of malpractice to the Appellate Division Disciplinary Committee as required under DR 1-103. *535 Thereafter, the two partners “continuously berated plaintiff’ for forcing them to comply with DR 1-103 and eventually terminated him. (80 NY2d at 632.)
Recognizing the firmly rooted employment-at-will doctrine as articulated in Murphy and Sabetay, the Court of Appeals nonetheless noted that “[a]s to an implied-in-law duty ... a different analysis and other considerations pertain.” (Id. at 635.) It went on to note that unlike the employees in Murphy and Sabetay, an associate’s
“performance of professional services for the firm’s clients as a duly admitted member of the Bar was at the very core and, indeed, the only purpose of his association with defendants. Associates are, to be sure, employees of the firm but they remain independent officers of the court responsible in a broader public sense for their professional obligations. Practically speaking, plaintiffs duties and responsibilities as a lawyer and as an associate of the firm were so closely linked as to be incapable of separation. It is in this distinctive relationship between a law firm and a lawyer hired as an associate that plaintiff finds the implied-in-law obligation on which he founds his claim.
“We agree with plaintiff that in any hiring of an attorney as an associate to practice law with a firm there is implied an understanding so fundamental to the relationship and essential to its purpose as to require no expression: that both the associate and the firm in conducting the practice will do so in accordance with the ethical standards of the profession. Erecting or countenancing disincentives to compliance with the applicable rules of professional conduct, plaintiff contends, would subvert the central professional purpose of his relationship with the firm — the lawful and ethical practice of law.” (Id. at 635-636.)
Central to the Court’s holding in Wieder was the reporting to the Appellate Division requirement of DR 1-103, noting that the Legislature had delegated the responsibility of maintaining the standards of ethics and competence to that Court. Thus, this “core Disciplinary Rule” was, according to one commentator, “nothing less than essential to the survival of the profession.” (Id. at 636, citing Gentile, Professional Responsibility — Reporting Misconduct By Other Lawyers, NYLJ, Oct. 23, 1984, at 1, col 1; at 2, col 2.)
*536 The Court also noted that an associate’s failure to comply with the reporting requirements may result in suspension or disbarment. (Id. at 636-637.)
“The critical question [the Court noted] is whether this distinction calls for a different rule regarding the implied obligation of good faith and fair dealing from that applied in Murphy and Sabetay. We believe that it does in this case, but we, by no means, suggest that each provision of the Code of Professional Responsibility should be deemed incorporated as an implied-in-law term in every contractual relationship between or among lawyers.” (Id. at 637.)[5]
Relying on this limitation, defendants argue that the Wieder court limited the “implied-in-law” obligation for breach of contract claims only in cases where an associate is terminated for insisting that his firm comply with the requirements of DR 1-103. Thus, according to defendants, since Connolly was not terminated for insisting that the firm comply with DR 1-103, Murphy and Sabetay control thereby giving them the unfettered right to terminate Connolly for any reason or no reason at all.
Although this court recognizes that Wieder was intended to be a narrow exception to the employment-at-will doctrine, defendants’ argument requires an illogical reading of Wieder. That is, according to defendants, an implied-in-law obligation exists where an associate insists that his partners report misconduct as defined in DR 1-102 to the Appellate Division Disciplinary Committee pursuant to DR 1-103, but would not be protected for refusing to engage in DR 1-102 misconduct in the first instance. The court clearly could not have intended such a result. Indeed, in a situation similar to the case at bar, the court in Kelly v Hunton & Williams (1999 WL 408416, 1999 US Dist LEXIS 9139 [ED NY 1999]) noted the problems with this argument. There, an associate was terminated for complaining about a partner’s billing practices. In rejecting the firm’s argument that Wieder was inapposite because there was no threat by the *537 associate to go to the Disciplinary Committee, the court held that
“[i]f a law firm fires an associate in retaliation for reporting a lawyer’s misconduct to the firm, its action is inherently coercive and necessarily implies an effort to impede post-termination reporting to the Disciplinary Committee. Thus, a cause of action is available under Wieder. The associate’s stated intention to go to the disciplinary authorities may be powerful circumstantial evidence of the firm’s intent to punish and/or silence him or her, but it is neither dispositive nor necessary to the associate’s claim.” (1999 WL 408416, *9, 1999 US Dist LEXIS 9139, *27.)
This position is supported by Lichtman v Estrin (282 AD2d 326 [1st Dept 2001]) which like Kelly was not cited by the parties. In Lichtman, the plaintiff alleged in his breach of contract cause of action that he was terminated because he “objected to, and refused to participate in, the unlawful conduct proposed by [a partner’s] plan to continue practicing law after his anticipated suspension or disbarment.” (Id.) The Appellate Division, First Department, held that plaintiff’s allegations were
“sufficient to state a cause of action for breach of an implied-in-law term of his relationship with defendant law firm, i.e., that both plaintiff and the firm would conduct the firm’s legal practice in compliance with the rules of conduct and ethical standards of the profession and that the firm ‘would not act in any way to impede or discourage plaintiffs compliance.’ ” (Id. at 327, citing Wieder at 638.)
Here, viewing the facts in the light most favorable to Connolly, he clearly has a cause of action for a breach of an implied-in-law term under Wieder. As the associate in Kelly, Connolly was an employee-at-will who was terminated for his refusal to violate DR 1-102. Indeed the firing and the subsequent January 22 letter were inherently coercive and implied an effort to impede posttermination reporting. Thus, unlike the plaintiff in Geary v Hunton & Williams (257 AD2d 482 [1st Dept 1999]), who was terminated before he had raised any concerns about a partner’s billing practices with the other partners, here, plaintiff alleged that he was terminated specifically for his “refusal to allow himself to be drawn into the cover-up of defendants’ wrong *538 ful acts.” (See also Lichtman v Estrin, 282 AD2d at 327-328.) Whether his claim survives a motion for summary judgment pursuant to CPLR 3212 after completion of discovery is of no moment at this juncture.
Given that plaintiff has pleaded a cause of action cognizable at law, the complaint will not be dismissed even though plaintiff does not have a valid cause of action for wrongful discharge (Horn v New York Times, 100 NY2d 85, 96 [2003]) or economic duress (Bank Leumi Trust Co. of N.Y. v D’Evori Intl., 163 AD2d 26 [1st Dept 1990]).
Defendants’ Other Arguments
As partners in a limited liability partnership, Napoli, Bern and Kaiser also argue that pursuant to Partnership Law § 26 (b) they cannot be held accountable for the liabilities of the partnership. As the defendants acknowledge, however, Partnership Law § 26 (c) (i) provides that a partner may be held liable for wrongful conduct committed by them or a person under their direct supervision or control. Here, accepting plaintiff’s allegations as true, the complaint clearly implicates Kaiser in misconduct and it states that Bern prepared the false affidavit which plaintiff refused to sign. And although the complaint merely states that Napoli, as a “principal of NKB and NB . . . guided every aspect of those firms’ operation and existence during the [relevant] period of time,” given that no discovery has yet taken place, it would be premature to dismiss the case against Napoli at this juncture. (CPLR 3211 [d].)
Defendants next argue that, since plaintiff was not a partner and thus there existed no fiduciary relationship, he is not entitled to an accounting. Defendants are correct in asserting that plaintiff is not entitled to an accounting. (Partnership Law § 44; Vitale v Steinberg, 307 AD2d 107, 110 [1st Dept 2003].) Accordingly, that portion of the second cause of action which seeks an accounting and the fourth cause of action are dismissed as to all defendants.
In addition to the arguments raised by Napoli and Bern, defendants NKB, NB and Kaiser argue that the complaint should be dismissed because the summons with notice improperly failed to give notice of the action. This portion of the motion is denied inasmuch as the requirements of CPLR 305 (b) were satisfied. While the words “[t]he object of this action is breach of contract” “may not apprise the defendants *539 of the precise legal theory behind plaintiff’s case, they adequately apprise defendants of the ‘nature of the action’ at this stage of the litigation.” (Pilla v La Flor De Mayo Express, 191 AD2d 224, 224 [1st Dept 1993].) The defendants here were not lay and unsophisticated people with little knowledge of the law. Rather, they were partners in the practice of law.
Napoli’s and Bern’s request for sanctions, first raised in reply, is denied. Even if sanctions were properly requested in their motion, clearly they do not lie here.
Defendant NB also argues that the complaint should be dismissed because plaintiff was never employed by NB. This portion of the motion is denied at this juncture. If it turns out that NB was created to avoid NKB’s liability, NB may still be held liable under, for example, a successor liability theory.
Plaintiff’s Cross Motion to Disqualify Defendants’ Various Counsel and for Sanctions
Motions to disqualify counsel, as this court recently noted in First Hudson Fin. Group, Inc. v Martinos (11 Misc 3d 394, 397 [Sup Ct, NY County 2005]), are subject to a high burden of proof given that “disqualification interferes with a party’s right to retain counsel of his choice, and, in the current reality of litigation, disqualification motions are often utilized as a tactical tool. . . Moreover, the appearance of impropriety, without more, is insufficient to grant a motion to disqualify.” Here, plaintiff has failed in his burden of establishing that such a drastic remedy is warranted. First, it should be noted that Napoli and Bern each have separate counsel. Moreover, plaintiff has not demonstrated how Jackson Lewis LLP’s representation of NKB, NB and Kaiser creates a conflict. Accordingly, this portion of plaintiffs motion is denied.
Plaintiff also seeks sanctions against Napoli’s and Bern’s respective counsels for misrepresenting facts. This court, however, is hard pressed to sanction defendants for responding to what they perceived to be plaintiff’s very serious allegations. This part of the motion is therefore denied.
Accordingly, based on the foregoing discussion, it is ordered that defendants Napoli’s and Bern’s motion to dismiss (motion sequence No. 2) is granted solely to the extent of dismissing that portion of the second cause of action which seeks an accounting and the fourth cause of action; and it is further *540 ordered that defendants Napoli, Kaiser & Bern, LLP, Napoli Bern, LLC, and Gerald Kaiser’s motion to dismiss (motion sequence No. 3) is also granted solely to the extent of dismissing that portion of the second cause of action which seeks an accounting and the fourth cause of action; and it is further ordered that plaintiffs motion to disqualify defendants’ various counsel is denied.

. A reading of the contract clearly indicates that paragraph 3.1 (f) contains a typographical error. Paragraph 3.1 (f) of the contract states that termination of the contract occurs “[u]pon two (2) weeks’ or more prior notice to the Law Firm to Attorney at any time for any reason or for no reason whatsoever.” Contrary to plaintiffs assertions, as a reciprocal clause to paragraph 3.1 (e) (which gave plaintiff the right to terminate the contract for any reason or no reason whatsoever), the parties clearly intended paragraph 3.1 (f) to read “[u]pon two (2) weeks’ or more prior notice from the Law Firm to Attorney at any time for any reason or for no reason whatsoever.”

. Plaintiff asserts in his opposition papers that the third cause of action is for economic duress, while defendants assert that it is for extortion.

. Code of Professional Responsibility DR 1-103 (a) (22 NYCRR 1200.4 [a]), “Disclosure of information to authorities,” states: *534 “(a) A lawyer possessing knowledge, (1) not protected as a confidence or secret, or (2) not gained in the lawyer’s capacity as a member of a bona fide lawyer assistance or similar program or committee, of a violation of section 1200.3 [DR 1-102] of this Part that raises a substantial question as to another lawyer’s honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.”

. Code of Professional Responsibility DR 1-102 (22 NYCRR 1200.3), “Misconduct,” states in relevant parts:
“(a) A lawyer or law firm shall not:
“(1) Violate a disciplinary rule.
“(2) Circumvent a disciplinary rule through actions of another.
“(3) Engage in illegal conduct that adversely reflects on the lawyer’s honesty; trust worthiness or fitness as a lawyer.
“(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
“(5) Engage in conduct that is prejudicial to the administration of justice.”

. Interestingly, the Wieder court (at 638-639) rejected the plaintiffs argument that
“the dictates of public policy in DR 1-103 (A) have such force as to warrant our recognition of the tort of abusive discharge pleaded in the fifth cause of action. While the arguments are persuasive and the circumstances here compelling, we have consistently held that ‘significant alteration of employment relationships, such as the plaintiff urges, is best left to the Legislature’ (Sabetay v Sterling Drug, supra, at 336 [citing Murphy v American Home Prods. Corp., supra, at 301-302]).”