[623 NYS2d 560]

Joseph M. Mulder, Respondent-Appellant, v Donaldson, Lufkin & Jenrette, Appellant-Respondent, and Robert Albano, Respondent.

First Department, March 7, 1995

302

## APPEARANCES OF COUNSEL

*Leslie Trager* of counsel, New York City *(Morely & Trager,* attorneys), for respondent-appellant.

*D. Scott Wise* of counsel, New York City *(Stephen D. Hibbard, Deborah A. Torrisi* and *Rita M. Costabile* on the brief; *Davis Polk & Wardwell,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

Asch, J.

The facts set forth herein are taken from the plaintiff's complaint. Since we are dealing with an appeal from an order granting, in part, and denying, in part, a motion to dismiss that complaint for failure to state a cause of action, we must assume for the purposes of this appeal that all of these facts are true, and resolve all inferences reasonably flowing from them in favor of the plaintiff *(Sanders v Winship,* 57 NY2d 391, 394).

Plaintiff auditor has been a member of the Securities Industry Association for over 20 years and an employee of the defendant brokerage house, Donaldson, Lufkin & Jenrette (DLJ), for over 13 years. Plaintiff, in the course of his duties, in auditing the Miami office of the defendant DLJ, reported violations of brokerage policies, and, indeed, of the rules of the Securities and Exchange Commission, the New York Stock Exchange and the laws of the United States.

Plaintiff's report disclosed, *inter alia,* that a corporate account was controlled by three lawyers, one of whom was linked to a money "laundering" scheme in an indictment of the drug lord, Pablo Escobar. After the public release of the information concerning Escobar, plaintiff's immediate superior was informed that the account, containing about $10,000,000 in Government-backed securities, would leave the defendant brokerage but come back "repackaged" as an offshore trust. Subsequently, the account did return with the same securities as an offshore corporation. In violation of Securities and Exchange Commission and New York Stock Exchange rules, none of the persons in control of the corporation were listed but the officers for the offshore corporation were solely listed as three other offshore corporations.

Money was accepted from third parties and sent to other third parties who had no apparent relationship to accounts at the defendant brokerage. Many of the accounts in which this

took place were not involved with securities transactions at all. The wiring of funds to third parties and the receipt of third-party checks violated the brokerage's rules.

Large amounts of money were wired overseas to third parties to accounts in countries known as "secrecy" countries. In a number of instances, the funds were wired in such a manner as to conceal the true name of the brokerage customer wiring the funds.

Checks payable to customers were delivered to salesmen and in many cases endorsed over to third parties, in violation of the accepted practice in the securities industry and the rules of defendant brokerage. Subsequent to the issuance of his report, plaintiff discovered that blank checks were being filled in as to payee, date and amount by a salesman in the Miami office for funds exceeding $400,000, in some cases. In addition, a check for $80,000 issued by the defendant DLJ to one of the customers in the Miami office was deposited in an account seized by the Federal Government as containing drug-related proceeds, in connection with the Pablo Escobar indictment. The customer had purchased $90,000 of Government securities from the Miami office which then margined the account and issued the $80,000 check, deposited in the seized account. The securities paid a rate of 8⅜%, and the brokerage charged a margin interest rate of 10½%, causing an apparent loss to the customer.

A meeting was held to discuss some of the issues raised by plaintiff's report in March 1991. As a result of this meeting, it was decided that third-party wires and receipts would no longer be allowed to continue. A memorandum was issued by defendant Mr. Robert Albano, the compliance director of DLJ, to the national sales manager, Mr. Michael Campbell, who in turn, distributed the memorandum to employees directing that this practice of receiving third-party checks and making wires to third parties not be allowed any longer, except in unusual circumstances and with written permission of both parties. The plaintiff, however, found that the operating rules pursuant to this memorandum were not being followed. He wrote a memorandum to Mr. Albano, asking where the required written authorizations were for the third-party wires and checks. Not hearing from Albano, plaintiff called him and Albano hung up on him after using an expletive indicating he did not want to be bothered any further. Two weeks later, plaintiff was fired by Albano.

In August of 1991, plaintiff met with the vice-chairman of the brokerage, Mr. Carl Menges, and gave him a letter informing him of his investigation. Thereafter, plaintiff was asked by Menges to work unofficially with him and with DLJ's attorneys, Davis Polk & Wardwell, in gathering additional information. Plaintiff was informed by an attorney from the firm that he had done an excellent job. Both Menges and Davis Polk & Wardwell promised plaintiff that they would "do the right thing" for him. When it became apparent, however, that nothing further was being done, plaintiff commenced an arbitration proceeding before the New York Stock Exchange which resulted in an award to him of $114,668 and costs of $1,000.

In the matter directly before us, the IAS Court denied defendants' motion, made pursuant to CPLR 3211 (a) (7), to dismiss the complaint, as to the first cause of action seeking punitive damages. It granted that motion as to the second and third causes of action seeking compensatory and punitive damages for slander, finding that the absolute privilege of Civil Rights Law § 74 applied.

With respect to the first cause of action, the IAS Court found that the exception to the "at will" employment doctrine recognized by the Court of Appeals for licensed attorneys *(Wieder v Skala,* 80 NY2d 628), should be extended to securities dealers and "most probably, to any licensed business or profession whose continued practice is subject to compliance with laws or regulations governing the conduct of such business or profession" *(Mulder v Donaldson, Lufkin & Jenrette,* 161 Misc 2d 698, 703). We disagree with that expansive construction of *Wieder v Skala.*

It is well settled that in the absence of a written employment contract, an employee is deemed to be an "at will" employee and may be terminated (or leave her employment), at any time, for *any* reason or even for *no* reason *(Martin v New York Life Ins. Co.,* 148 NY 117, 121). The Court of Appeals, in a case involving the alleged wrongful discharge of an employee who was a "whistle-blower", held that an employer's right at any time to terminate an employment at will remains unimpaired in New York, absent a constitutionally impermissible purpose, a statutory proscription or an express limitation in the applicable contract of employment *(Murphy v American Home Prods. Corp.,* 58 NY2d 293, 305; *cf., Weiner v McGraw-Hill, Inc.,* 57 NY2d 458).

The Court reaffirmed, in *Sabetay v Sterling Drug,* (69 NY2d 329), the *Murphy* rejection of implied covenants in employment relationships and its refusal to relax the *Weiner* requirements or to expand the *Weiner* holding into the implied contract category *(supra,* at 337).

In *Wieder v Skala (supra),* the Court of Appeals held that an attorney employed at will by a law firm stated a cause of action for breach of contract when his employment was terminated, since the termination was alleged to have occurred because he insisted that the firm report professional misconduct to the Disciplinary Committee allegedly committed by another associate. The Court agreed with the defendants that plaintiff's complaint did not contain allegations which would come under the *Weiner* exception for express contractual limitations. However, the Court noted that in contrast to the plaintiffs in *Murphy v American Home Prods. Corp. (supra)* and *Sabetay v Sterling Drug (supra),* who performed accounting services in the financial departments of large companies as part of corporate management, the plaintiff attorney's performance of professional activities as a duly admitted member of the Bar was "at the very core and, indeed, the only purpose of his association with defendants", and, further recognized the importance that attorneys "remain independent officers of the court responsible in a broader public sense for their professional obligations". *(Wieder v Skala, supra,* at 635.) The Court concluded: "We agree with plaintiff that these unique characteristics of the legal profession in respect to this core Disciplinary Rule [DR 1-103 (A)] make the relationship of an associate to a law firm employer intrinsically different from that of the financial managers to the corporate employers in *Murphy* and *Sabetay.* The critical question is whether this distinction calls for a different rule regarding the implied obligation of good faith and fair dealing from that applied in *Murphy* and *Sabetay." (Supra,* at 637.)

The Court decided that the distinction *did* require a different rule and concluded that plaintiff stated a valid claim for breach of contract based on an implied-in-law obligation in his relationship with the law firm *(supra,* at 638).

Accordingly, *Wieder v Skala (supra),* far from being applicable to the facts herein, expressly distinguished its facts from situations which were very similar to plaintiff's employment circumstances with the defendant brokerage. Consequently, the IAS Court erred in expanding the holding of *Wieder* beyond its limited application.

However, in an affidavit in opposition to defendants' motion to dismiss, plaintiff attached a "manual" published by the owner of DLJ, Equitable Financial Companies, which he alleged was given to him as an employee of the brokerage, and which he relied upon in his actions believing that no reprisals would be taken against him for following the procedures set forth in the manual. This manual said, in pertinent part, "[i]f you have knowledge of * * * misconduct, report it to your legal counsel or your Chief Executive Officer. Report financial irregularities to the Internal Auditor of The Equitable. Reporting such infractions is encouraged in the spirit of good corporate governance. Anyone doing so will be protected against reprisals". While defendant DLJ states that the court should disregard evidentiary affidavits offered by the parties and decide the motion solely on the allegations in the complaint, it is well settled that affidavits may be used to remedy defects in the complaint and supplement its allegations upon a motion to dismiss (see, *Arrington v New York Times Co.,* 55 NY2d 433, 442; *Rovello v Orofino Realty Co.,* 40 NY2d 633).

■ Thus, since this reporting requirement and reciprocal promise of protection in the manual impose an *express limitation* on the right of DLJ to terminate employees who make such reports, plaintiff possesses a cause of action for breach of contract. "Of course, if there were an express limitation on the employer's right of discharge it would be given effect even though the employment contract was of indefinite duration. Thus, in *Weiner v McGraw-Hill, Inc.* (57 NY2d 458), cited by plaintiff, we recently held that, on an appropriate evidentiary showing, a limitation on the employer's right to terminate an employment of indefinite duration might be imported from an express provision therefor found in the employer's handbook on personnel policies and procedures." *(Murphy v American Home Prods. Corp.,* 58 NY2d 293, 305, *supra.)*

DLJ asserts that, in any event, the principles announced above dealing with an express limitation on termination do not apply in this case since plaintiff has not alleged that the manual induced him to leave his prior employment or that he rejected other offers of employment in reliance upon the assurances in the manual (see, *Weiner v McGraw-Hill, Inc., supra,* at 465). However, this argument simply seeks to portray a factual pattern present in *Weiner* as a governing principle of law. The salient and necessary prerequisite of law, set forth in *Weiner,* which is met herein, is the *reliance* alleged by the plaintiff. While plaintiff did not leave another

job, he did aggressively pursue the true facts about a money-laundering scheme and a presumed attempted "cover up" upon the express written promise of the employer that there would be no retribution for reports of violations of law, regulations or other irregularities.

■ Plaintiff, however, cannot recover for breach of contract damages in this action. He has already participated in arbitration proceedings, where he was given an award by the arbitrators. Thus, any claim for compensatory damages arising out of the matters submitted to arbitration is barred by the doctrine of res judicata *(see, Matter of Ranni [Ross],* 58 NY2d 715, 717). However, plaintiff now seeks punitive damages based upon the termination of "those who uncover, as part of their job as auditors, violations of United States laws and regulations and the regulations of the New York Stock Exchange" (complaint, first cause of action against Donaldson, Lufkin & Jenrette). Such punitive damages may not be awarded in arbitration *(see, Garrity v Lyle Stuart, Inc.,* 40 NY2d 354). Even if the arbitrators specifically deny such punitive damages in their award we have held such a claim *not* to be precluded by the arbitration award. "This is to say that the process of meting out punishment for wrongdoing cannot be divorced from the process of deciding whether wrongdoing occurred * * * leaving it to the arbitrators to decide whether any wrongdoing occurred and to the courts to decide on the appropriate measure of punishment * * * is unworkable" *(Belco Petroleum Corp. v AIG Oil Rig,* 164 AD2d 583, 598). Accordingly, plaintiff's cause of action for punitive damages cannot exist without a corresponding substantive cause of action, even though plaintiff is precluded from recovering compensatory damages on that substantive cause of action. "Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights *(see, Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358). However, where the breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations', punitive damages are recoverable if the conduct was 'aimed at the public generally' *(see, Walker v Sheldon,* 10 NY2d 401, 404-405). Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the

*Walker* standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *(Rocanova v Equitable Life Assur. Socy.,* 83 NY2d 603, 613.)

Defendant DLJ asserts on this appeal that plaintiff does not meet the test set forth in *Rocanova (supra,* at 613) since he does not and cannot allege that DLJ's conduct was "actionable as an independent tort", because no independent tort for wrongful discharge exists under New York law.

It is true that the Court of Appeals has consistently declined to recognize a common-law tort of abusive discharge, holding that such a "significant alteration" of the employer-employee relationship should be left to the Legislature *(Sabetay v Sterling Drug, supra,* at 336, citing *Murphy v American Home Prods. Corp., supra,* at 301-302; *Wieder v Skala,* 80 NY2d 628, 638-639, *supra).* However, the Court of Appeals in *Rocanova v Equitable (supra)* specifically noted that the "independent tort" need not be identical to the alleged breach of contract, but can be "conduct *constituting, accompanying,* or *associated* with the breach of contract". *(Supra,* at 613 [emphasis added].)

■ The factual history in the complaint, which, as noted, must be granted every favorable inference to sustain it, sets forth allegations that plaintiff was fired from his job as an auditor in the Miami office of defendant brokerage in direct violation of an express agreement for reporting a money-laundering scheme which violated both the law and regulations of administrative agencies and the New York Stock Exchange. Even assuming the plethora of illegal and unethical acts by DLJ did not "constitute" the breach of contract, they certainly "accompanied" or were "associated" with the breach of contract, i.e., the firing of plaintiff *(see, Rocanova v Equitable Life Assur. Socy., supra,* at 613). Further, the allegations of the complaint and supporting affidavit can be read to constitute fraudulent misrepresentations made to plaintiff by a senior officer of DLJ and its law firm to dissuade him from taking any further action both as to his termination and publication of the participation of the Miami office in the money-laundering scheme. Thus, the breach of contract herein also "involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal

indifference to civil obligations'" *(supra,* at 613, quoting *Walker v Sheldon, supra,* at 405). Moreover, the "conduct was part of a pattern of similar conduct directed at the public generally" *(supra,* at 613).

■ Finally, we agree with the IAS Court that plaintiff's complaint failed to state a cause of action against DLJ and defendant Albano for actual and punitive damages for slander. Defendant Albano's statement to the Wall Street Journal was a substantially accurate description of defendant DLJ's position in the arbitration proceeding and thus was privileged under New York Civil Rights Law § 74.

Accordingly, the order of the Supreme Court, New York County (Walter M. Schackman, J.), entered on or about May 23, 1994, which granted defendants' motion, pursuant to CPLR 3211 (a) (7), to dismiss the complaint as to the second and third causes of action and denied the motion as to the first cause of action, should be affirmed, without costs or disbursements.

ELLERIN, J. P., WALLACH and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 23, 1994, affirmed, without costs.