OPINION OF THE COURT
Moskowitz, J.
In this appeal, plaintiff-petitioner, a research scientist, alleges that he reported suspected research misconduct of a colleague to his superiors who, in turn, fired him in retaliation. The motion court denied his petition to vacate respondents’ termination of his employment and dismissed this hybrid plenary action and CPLR article 78 proceeding pursuant to CPLR 3211 (a) (1) and (7). We unanimously reverse to reinstate the causes of action based on retaliation and failure to follow disciplinary procedures.
According to the complaint, in July 2002, respondents New York University, NYU Hospitals Center and NYU Langone Medical Center (NYU) hired petitioner Dr. David O’Neill as a nontenured, full-time faculty member, with an annual starting *202 salary of $140,000 pursuant to an offer letter. NYU’s Faculty Handbook provided that appointment to nontenured faculty positions “shall be for a definite period of time, not exceeding one academic year unless otherwise specified.”
NYU renewed petitioner’s appointment annually. As recently as February 23, 2010, NYU confirmed his appointment for the 2009-2010 academic year from September 1, 2009 through August 31, 2010 in a renewal letter. The offer letter provided that petitioner’s appointment with NYU was “contingent upon continued employment in good standing with the [NYU] School of Medicine and compliance with all University and School of Medicine rules and regulations and other contractual obligations.”
These rules and regulations included NYU’s Faculty Handbook, containing its Code of Ethical Conduct (the NYU Code of Ethics) and policies related to research misconduct (the Research Misconduct Policies), and the NYU Langone Medical Center Code of Conduct (NYU Code of Conduct), containing its N on-Intimidation/N on-Retaliation Policy (the Non-Retaliation Policy).
The NYU Code of Ethics states that “[e]ach member of the University is expected to uphold the standards of [NYU] and to report suspected violations of the Code or any other apparent irregularity.” The Research Misconduct Policies define “research misconduct” as including “fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results.” The NYU Code of Conduct elucidates as follows:
“Every member of the Medical Center has an obligation to report situations or activities that are — or even seem to be — violations of the Code. If something concerns you but you are not sure whether it is a violation of the Code, you must raise the concern and ask for advice.”
The Non-Retaliation Policy states that “[t]he Medical Center promises that there will be no retaliation against you if you raise concerns or questions about misconduct or report violations of this Code.”
The Faculty Handbook also contains NYU’s disciplinary policies that include its General Disciplinary Regulations Applicable to both Tenured and Non-Tenured Faculty Members and the Faculty Grievance Procedures. The Disciplinary Regulations ap *203 ply “where a question arises concerning an alleged violation by any member of the faculty of a rule or regulation of [NYU]” and specify whether the dean or a faculty committee addresses each question. The Grievance Procedures provide a mechanism for NYU faculty members to “seek redress of their grievances.”
Petitioner’s appointment with NYU included his duties as Assistant Director of the Vaccine/Cell Manipulation Core Laboratory for the NYU Cancer Institute or the Vaccine Lab. His supervisor was Dr. Nina Bhardwaj. She reported to Dr. William Carroll, the Director of the Cancer Institute. In 2004 and 2005, petitioner oversaw the construction of the Vaccine Lab. The lab’s first major project was a clinical trial, that Bhardwaj designed, comparing a new and relatively expensive “dentritic cell” vaccine for malignant melanoma (skin cancer) with an inexpensive, decades-old mineral oil “Montanide” vaccine. The research team included petitioner and Bhardwaj as well as other staff members. Bhardwaj was the co-inventor and patent holder of the dendritic cell vaccine. The clinical trial also required the research team to write and submit a research paper to a scientific journal. Bhardwaj named petitioner as lead author of the paper.
It is undisputed that the clinical trial results showed that the dendritic cell vaccine was less effective than the Montanide vaccine. Throughout the clinical trial and for months thereafter, the research team exchanged e-mails and letters and held conferences on the clinical study. During this time, petitioner believed that Bhardwaj was attempting to shape the written and oral presentation of the clinical trial results in an unethical manner to downplay and distort the negative findings about the dendritic cell vaccine.
In March 2009, the American Society of Clinical Oncology (ASCO) invited petitioner to present the results of the clinical trial at its June 2009 meeting. Although ASCO’s rules require that the lead author present, Bhardwaj demanded that she present. Despite this, petitioner presented. Carroll thereafter recommended petitioner for an additional appointment and praised his work in the Vaccine Lab.
By August 2009, petitioner had drafted the research paper. Bhardwaj reviewed the paper and altered its findings to the extent of allegedly eliminating some raw data and supplying a different statistical analysis to minimize the differing performance results between the two vaccines. Petitioner believed that Bhardwaj’s actions constituted research misconduct. Thus, he *204 e-mailed Carroll and the coauthors of the research paper, stating that the new analyses were “flawed and misleading and therefore invalid.”
On October 29, 2009, in a meeting with Carroll and Lauren Hackett, an NYU administrator, petitioner distributed and read aloud a prepared statement that outlined his concerns over Bhardwaj’s actions. Petitioner asserted that during this time, the promotion his supervisors had recommended a year earlier had stalled. On November 19, 2009, in another meeting with Hackett, Carroll handed petitioner a letter, stating that petitioner’s “lingering . . . anger” impeded progress in the Vaccine Lab. Carroll cited petitioner’s concerns over the research paper’s -new analyses as one example of a barrier to progress. The letter warned that petitioner’s “[f]ailure to immediately rectify and sustain an acceptable level of behavior may lead to further disciplinary action including termination of [his] employment.”
Petitioner typically arranged tours of the Vaccine Lab for outside visitors. However, in April, 2010, Bhardwaj arranged a tour. During the tour, petitioner intervened and took over from Bhardwaj. Petitioner then e-mailed Bhardwaj, advising that she first contact him with regard to any future site visits. On April 22, 2010, Carroll learned of petitioner’s e-mail and telephoned him, stating that Bhardwaj was not obligated to prearrange lab site visits with him. The conversation became heated. Petitioner acknowledged that he intermittently raised his voice but did so to keep from being interrupted. He asserted that the only time he raised his voice to Carroll was during this brief telephone call.
On April 23, 2010, petitioner met with Associate Dean David Levy and continued to press his concerns about Bhardwaj’s actions and what he perceived as Carroll’s retaliation. Levy advised petitioner to consult Dr. Steven Abramson, Vice Dean for Faculty and Academic Affairs, to file a grievance.
On the morning of May 3, 2010, petitioner requested an appointment with Abramson to begin the grievance process. That afternoon, Carroll called petitioner to a meeting and handed him a termination letter. The termination letter, dated April 25, 2010, dismissed petitioner, “effective immediately,” for alleged “unprofessional behavior.” The cited behavior was that, during the April 22 telephone call with Carroll, petitioner’s “tone became very argumentative” and his “voice rose in anger.”
On May 7, 2010, petitioner met with Abramson and requested to appeal his termination and file a grievance. Petitioner reiter *205 ated his concerns regarding Bhardwaj, Carroll’s retaliation and NYU’s failure to follow its disciplinary policies. Petitioner then retained counsel. Thereafter, Dr. Reginald Odom, NYU’s Vice President for Medical Center Employee and Labor Relations, periodically responded to counsel’s e-mails and telephone calls. However, on July 13, 2010, Odom advised petitioner’s counsel that NYU would not conduct an investigation or appeal, and that NYU maintained its termination decision. In August 2010, petitioner commenced this hybrid plenary action/article 78 proceeding by filing a petition, summons and verified complaint. He asserted five causes of action: (1) breach of contract by retaliation for reporting research misconduct; (2) breach of contract by failure to follow disciplinary policies; (3) defamation; (4) arbitrary, capricious and unlawful actions contrary to the ethical conduct policies; and (5) arbitrary, capricious and unlawful actions contrary to the disciplinary policies.
In October 2010, NYU moved to dismiss the petition and complaint pursuant to CPLR 3211 (a) (1) and (7). NYU argued that petitioner did not characterize his complaints about Bhardwaj as research misconduct until the commencement of this lawsuit. NYU contended that it thoroughly investigated petitioner’s research misconduct concerns and determined that the challenged research findings constituted a mere difference of opinion. NYU further argued that petitioner’s claims failed because he did not allege detrimental reliance on NYU’s non-retaliatory policies. NYU contended that it followed all relevant procedures before making a reasonable determination to discharge petitioner as an at-will employee based on his unprofessional behavior.
Petitioner opposed the motion, relying upon the allegations in his verified complaint and documentary evidence of, inter alia, NYU’s policies and promises not to retaliate against individuals who reported research misconduct. In his pleadings, petitioner did not specifically allege that he relied upon NYU’s non-retaliatory provisions when he reported Bhardwaj’s suspected research misconduct.
By order entered July 29, 2011, the motion court granted NYU’s motion to dismiss pursuant to CPLR 3211 (a) (1) and (7). The court was not persuaded by petitioner’s argument that NYU appointed him to a fixed, one-year employment term or that NYU could terminate him only for cause. Referring only to the offer letter and not the renewal letter, the court held that NYU appointed petitioner as a nontenured faculty member with *206 an unspecified employment period. The court rejected petitioner’s argument that, by referencing the NYU Faculty Handbook, it could find a definitive term of employment (Lobosco v New York Tel. Co./NYNEX, 96 NY2d 312, 317 [2001] [“(r)outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment (contracts)”]). The court noted that, in Slue v New York Univ. Med. Ctr. (409 F Supp 2d 349 [SD NY 2006]), an NYU “pharmacy aide,” who alleged wrongful discharge and breach of contract, had unsuccessfully argued that various NYU manuals and handbooks, including the Faculty Handbook, indicated an employment contract for a fixed duration. The motion court opined that petitioner was an at-will employee, as the court found in Slue.
Citing Lobosco (96 NY2d 312 [2001]), the court further noted that, even if a contract period is not of definite duration, a plaintiff may still maintain an action for breach of contract if “the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment” (2011 NY Slip Op 33615[U], *7). The court observed that other courts have strictly applied the criteria set forth in Weiner v McGraw-Hill, Inc. (57 NY2d 458 [1982]) in determining whether an exception to the at-will arrangement applies when the employment term is indefinite. Specifically, the court noted that the Weiner court looked to whether there was an express provision in an employee handbook stating that employers could terminate employees only for cause, whether the employer also orally assured the employee that there would be no termination without just cause and whether the employee turned down other employment opportunities in reliance upon the assurances.
Thus, the motion court reasoned that petitioner’s first and second causes of action failed because no basis existed for finding that “NYU breached an employment contract with [petitioner] by terminating him without just cause” (2011 NY Slip Op 33615[U], *11). The court stated that petitioner’s fourth and fifth causes of action, based upon the same claims in the first and second causes of action, also warranted dismissal. The court noted that case law had limited the role of courts in the review of controversies involving academic institutions where the exercise of highly specialized professional judgments are at issue. The court concluded that NYU’s decision to terminate petitioner for unprofessional behavior was not arbitrary and capricious or shocking to the conscience.
*207 The court also dismissed petitioner’s third cause of action, for defamation, holding that Carroll’s alleged defamatory words (i.e., that petitioner was inappropriately “angry,” and exhibited “hostility” and “unprofessional behavior”) constituted nonactionable expressions of opinion, as opposed to assertions of fact (id.). The court held that, even assuming it viewed the challenged comments as fact, rather than opinion, they fall within a qualified privilege and are not actionable, as the Slue court found. The court discussed that, while petitioner was correct to state that he could rebut a qualified privilege with proof that the challenged statements were false or uttered with actual malice or reckless disregard to their truth or falsity, petitioner failed to submit the required proof.
Breach of Contract
Petitioner argues that his employment relationship with NYU was not at-will, but that NYU hired him for a fixed term. He further argues that NYU’s policies contained express contractual promises, thus, creating binding limitations on NYU’s right to terminate. He contends that factual issues exist regarding his reliance on these limitations mitigating against an at-will employment arrangement. We find merit to these arguments.
Petitioner argues that the renewal letter, “confirm[ing]” his employment “for the academic year 2009-10,” combined with the Faculty Handbook, stating that nontenured faculty appointments “shall be for a definite period of time, not exceeding one academic year, unless otherwise specified,” created employment for a definite one-year period, warranting termination only for good cause. This issue requires examination of the terms of the renewal letter and whether we should interpret it in conjunction with the general terms of the Faculty Handbook that address nontenure appointment renewals.
The Court of Appeals has noted a “two step” analysis in determining the issue of whether an employment arrangement is at-will: “(1) if the duration is definite, the at-will doctrine is inapplicable, on the other hand, (2) if the employment term is indefinite or undefined, the rebuttable at-will presumption is operative and other factors come into the equation” (Rooney v Tyson, 91 NY2d 685, 689 [1998]). The Rooney court, in answering a question the Second Circuit certified, advised that the “definiteness aspect” of an alleged fixed duration contract must be “resolve[d] . . . first” (id. at 689-690 [citations omitted]). The Court held that an oral contract between plaintiff trainer and defendant boxer for the plaintiff to continue as trainer “for *208 as long as the boxer fights professionally” supported “a definite duration finding” (id. at 693). The Court reasoned that “[o]nly when we discern no term of some definiteness or no express limitation does the analysis switch over to the rebuttable presumption line of cases. . . . The agreement in this case is not silent [as to duration] and manifestly provides a sufficiently limiting framework” (id. at 690).
In Lichtman v Estrin (282 AD2d 326 [2001]), relying on Rooney, this court held that an agreement between the plaintiff and defendant law firm that the plaintiff would continue to work at the law firm until a potential suspension determination and, thereafter, during the period of any suspension, at an annual salary of $80,000 plus benefits, amounted to an employment contract for a definite period, as opposed to an at-will employment arrangement.
Here, we hold that NYU’s letters renewing petitioner’s employment over specific academic years (including the offer letter and the renewal letter), read in conjunction with the non-tenure hiring provision in the Faculty Handbook, evidence an employment arrangement for a fixed duration, sufficient to overcome the motion to dismiss (see e.g. Rooney, 91 NY2d at 690; Lichtman, 282 AD2d 326 [2001]).
Indeed, the renewal letter “confirmfed]’’ his “status as a member of the faculty of [NYU’s] School of Medicine for the academic year 2009-10.” The Faculty Handbook provides that appointments to nontenured positions, as in petitioner’s case, “shall be for a definite period of time, not exceeding one academic year.” The Faculty Handbook also states that renewed appointments would “automatically terminate” after a year unless NYU further renewed the appointment. In instances where employers have allowed renewable annual contracts to expire and the employee to continue working, courts have construed the new arrangement between the parties as at-will (see e.g. Wood v Long Is. Pipe Supply, Inc., 82 AD3d 1088 [2011]). Here, however, when NYU terminated petitioner in April 2010, he was in the middle of his 2009-2010 appointment term.
The motion court erred in relying on Lobosco (96 NY2d at 317 [“(r)outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment (contracts)”]). Indeed, the manual at issue in Lobosco, in contrast to the NYU Faculty Handbook here, expressly disclaimed that it constituted a contract: “This code of conduct is not a contract of employment and does not create any *209 contractual rights of any kind between [defendant] and its employees” (id. at 315).
While petitioner did not specifically plead NYU’s breach of an employment agreement with a fixed duration, he did argue the point in opposition to NYU’s pre-answer motion to dismiss and the court directly addressed his argument. Accordingly, as NYU cannot now claim prejudice, we conform the pleadings to the documentary evidence and arguments raised before the motion court (see CPLR 3025 [c]; see generally Fisher v City of New York, 48 AD3d 303, 304 [2008]; Matter of Denton, 6 AD3d 531, 532-533 [2004], lv denied 5 NY3d 714 [2005] [“Th(e) court may, sua sponte, relieve a petitioner of the failure to amend a pleading by deeming it amended to conform to the evidence presented . . . where, as here, it would not result in prejudice to the opposing party”]).
In its decision, the motion court cited as “compelling” Slue v New York Univ. Med. Ctr. (409 F Supp 2d 349 [SD NY 2006]). In Slue, NYU terminated the plaintiff from his position as a nontenured faculty member. The plaintiff then sued NYU for failing to follow the disciplinary policies in the Faculty Handbook. The court found that the Faculty Handbook, including its disciplinary policies, created no limitation on NYU’s right to discharge the plaintiff, an at-will employee (409 F Supp 2d at 357-362). However, the Slue court did conclude that those disciplinary policies were applicable where, as here, a nontenured faculty member allegedly violated a university rule or regulation. Thus, Slue is inapposite because, there, NYU terminated the plaintiff not for violating a university rule, but rather for inappropriate conduct in his private medical photography practice operated in an office on NYU property. Further, in contrast to Slue, NYU’s initial offer of employment to petitioner was contingent on his compliance with University and School of Medicine rules and regulations that required reporting of research misconduct and suspected violations of the Code of Conduct as well as NYU’s Non-Retaliation Policy.
Petitioner alleges that he reported his concerns about suspected research misconduct to his coauthors, Carroll, Hackett, Abramson, Keisha Lightbourne, the Director of Research Compliance, Levy and Odom. He further alleges that NYU denied him the dispute resolution and grievance procedures that the rules mandate for faculty accused of violating university rules. And, NYU did not attempt to counter petitioner’s allegations by documenting its requisite disciplinary policies. Accord *210 ingly, the second cause of action for breach of contract for NYU’s failure to follow its disciplinary policies is reinstated (see Felsen v Sol Cafe Mfg. Corp., 24 NY2d 682, 685-686 [1969] [holding that once a fixed term contract is established, the burden shifts to the employer to show cause for dismissal]).
Because we find petitioner has pleaded an employment arrangement for a fixed duration, analysis of the at-will doctrine is unnecessary (see Rooney, 91 NY2d at 689). Nevertheless, we also hold that petitioner, for purposes of a motion to dismiss, has sufficiently stated that NYU’s rules and regulations contained an express limitation on its right to discharge him on an at-will basis. The motion court held otherwise, opining that petitioner failed to allege detrimental reliance upon the express limitation at the time he reported Bhardwaj’s suspected research misconduct.
In New York, it is well settled that “ ‘where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason’ ” (Wieder v Skala, 80 NY2d 628, 633 [1992], quoting Murphy v American Home Prods. Corp., 58 NY2d 293, 300 [1983]). An employee may rebut this presumption if he demonstrates that his employer made him aware of an “express written policy limiting [the employer’s] right of discharge” and that the employee relied upon that policy to his detriment (Matter of De Petris v Union Settlement Assn., 86 NY2d 406, 410 [1995], citing Weiner v McGraw-Hill, Inc., 57 NY2d 458, 465-466 [1982]).
In Weiner, the Court of Appeals held that an employer’s express promise limiting its ability to discharge an employee at-will could create an enforceable contract. There, the plaintiff stated a cause of action for breach of contract when he alleged that he relied upon his employer’s oral assurances that it would terminate him only for cause, the employment application and the company handbook contained the same policy, he turned down offers of employment in reliance on this assurance and supervisors advised him to be careful when discharging other employees because the company would discharge them only for cause in accordance with the handbook (57 NY2d at 465-466).
The Court of Appeals recognized a further limited implied-in-law exception to at-will employment, in Wieder, where the employee, an attorney, had a duty to report unethical behavior that was “at the very core and, indeed, the only purpose of his association with [the] defendants” (80 NY2d at 635). In the past, *211 we have declined to extend the Wieder exception beyond the “unique characteristics of the legal profession” (Mulder v Donaldson, Lufkin & Jenrette, 208 AD2d 301, 306-307 [1995]). However, in Mulder, we recognized the “potential for a cause of action for breach of express contract based upon a provision in the defendant’s employment manual which specifically provided that an employee who reports wrongdoing ‘will be protected against reprisals’ ” (Sullivan v Harnisch, 81 AD3d 117, 124 [2010], quoting Mulder at 307).
Citing Mulder, petitioner argues that language in NYU’s rules and regulations, promising to protect employees who obey the requirement to report suspected research misconduct, amounts to an express limitation of the at-will employment rule. Petitioner asserts that. NYU alerted him to its policies when he accepted employment, by stating in the offer letter that his continued employment was contingent on his compliance with those policies. NYU also required him and all Medical Center employees to pass a test on its conduct policies.
The motion court held that petitioner’s claim fails because his pleadings contained no allegation that he was induced to leave his previous employment or turned down other offers of employment in reliance upon NYU’s policies. However, this court has previously noted that “Weiner should not be interpreted as limiting its holding to its specific facts, especially in light of the court’s formulation of a ‘totality of circumstances’ test” (Lapidus v New York City Ch. of N.Y. State Assn. for Retarded Children, 118 AD2d 122, 128 [1986], quoting Weiner, 57 NY2d at 467). Moreover, in Mulder, where the defendant employer argued that the plaintiffs allegations did not fit within Weiner, we stated:
“[T]his argument simply seeks to portray a factual pattern present in Weiner as a governing principle of law. The salient and necessary prerequisite of law, set forth in Weiner, which is met here, is the reliance alleged by the plaintiff. While plaintiff did not leave another job, he did aggressively pursue the true facts [about alleged company wrongdoing] upon the express written promise of the employer that there would be no retribution for reports of violations” (208 AD2d at 307-308; see also Marfia v T.C. Ziraat Bankasi, 147 F3d 83, 89 [2d Cir 1998] [“The absence of the talismanic phrase T relied upon the Manual’ does not, however, by itself *212 preclude a reasonable jury from weighing the evidence presented and concluding that (plaintiff) relied upon the Manual”]).
Here, the NYU Code of Ethics, the Code of Conduct, the Non-Retaliation Policy and the Research Misconduct Policies, in combination, include NYU’s express promise that it will protect employees from reprisal for reporting suspected research misconduct. Thus, we can infer petitioner’s reliance on NYU’s policies, given the complaint’s allegations of his compliance with those policies by reporting his concerns of suspected research misconduct. At this early stage of the litigation, these allegations are sufficient.
For the foregoing reasons, the first cause of action, for breach of contract based on retaliation, is reinstated.
Defamation
A claim for defamation must allege a “ ‘false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se’ ” (Salvatore v Kumar, 45 AD3d 560, 563 [2007], lv denied 10 NY3d 703 [2008], quoting Dillon v City of New York, 261 AD2d 34, 38 [1999]). “Even though a statement is defamatory, there exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter” (Foster v Churchill, 87 NY2d 744, 751 [1996]). The plaintiff may overcome this qualified privilege with allegations that the defendant made the defamatory statement with malice or reckless disregard for the truth or falsity of the statement (Loughry v Lincoln First Bank, 67 NY2d 369, 376 [1986]).
Petitioner argues that his pleadings sufficiently allege that Carroll made defamatory remarks, including that petitioner exhibited “anger,” “hostility,” “unprofessional behavior,” “a lingering element of anger and frustration” that was “clearly impeding [his] ability to effectively direct the Vaccine [Lab],” and that he had been terminated on account of his “unprofessional conduct.” He further argues that he has sufficiently pleaded malice by asserting that the “defamatory statements were part of a campaign of harassment conducted in retaliation” for his reporting of research misconduct (Pezhman v City of New York, 29 AD3d 164, 169 [2006]). Petitioner alleges that Carroll’s statements were false. He further alleges that the date Carroll made the challenged statements, less than two weeks af *213 ter he alerted Carroll and Hackett to Bhardwaj’s suspected research misconduct, shows that Carroll made the remarks with actual malice.
Here, it is apparent that the challenged statements Carroll made to petitioner were communications regarding a work related common interest (see Pitcock v Kasowitz, Benson, Torres & Friedman LLP, 74 AD3d 613 [2010], citing Brian v Richardson, 87 NY2d 46 [1995]). Thus, the challenged statements fall within the qualified privilege (Foster, 87 NY2d at 751). The complaint fails to overcome this privilege because it contains no more than conclusory allegations of malice, far from the “campaign of harassment” described by the court in Pezhman (29 AD3d at 169). Accordingly, the motion court correctly dismissed this claim.
Article 78
Petitioner argues that the motion court applied the wrong standard in denying and dismissing his article 78 petition.
“A disciplined or terminated employee may seek article 78 review to determine whether the employer contravened any of its own rules or regulations” (Matter of Hanchard v Facilities Dev. Corp., 85 NY2d 638, 641-642 [1995]). The standard of review is whether the employer “substantially abided by its own policies in terminating petitioner’s employment” (id. at 642).
Consistent with the parallel contract causes of action discussed above, petitioner has sufficiently alleged that NYU’s conduct was arbitrary and capricious when it violated its own rules and regulations by summarily dismissing him during his one-year, fixed appointment term without cause. Moreover, the motion court erred in relying upon Maas v Cornell Univ. (94 NY2d 87 [1999]). Although Maas noted that courts retain a limited role in reviewing “highly specialized” academic judgments, that kind of action is not at issue in this case. Rather, petitioner’s allegations concern NYU’s failure to follow its conduct and disciplinary policies and not any “highly specialized” judgment associated with the research he and his colleagues were conducting in the Vaccine Lab.
Accordingly, the order and judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered July 29, 2011, denying the petition seeking, inter alia, to vacate respondents’ termination of petitioner’s employment, and dismissing this hybrid plenary action and CPLR article 78 proceeding pursuant *214 to CPLR 3211 (a) (1) and. (7), should be reversed, on the law, without costs, the judgment vacated, and the first, second, fourth and fifth causes of action reinstated.
Andrias, J.E, Sweeny, Renwick and Freedman, JJ., concur with Moskowitz, J.
Order and judgment (one paper), Supreme Court, New York County, entered July 29, 2011, reversed, on the law, without costs, the judgment vacated, and the first, second, fourth and fifth causes of action, reinstated.